Case number 18-5305, Wilia Dean Parker et al versus Mervyn Winwood et al. Oral argument, 15 minutes per side. Mr. Cates for the appellants. Good morning. Good morning. May I proceed? You may. May it please the court, my name is Taylor Cates. I'm at Birch Porter and Johnson in Memphis. I am ably assisted this morning by my colleague Lonnie Lester. We have the pleasure of representing Ms. Deanie Parker and Ms. Rose Banks. Ms. Parker is a legend of Stax Records. She is the co-songwriter along with Mr. Homer Banks, Ms. Rose Banks' deceased husband, of the song Ain't That a Lot of Love. The trial court granted the defendant's motion for summary judgment because it held that the only proof that the plaintiff submitted in this case was inadmissible hearsay. I will focus my remarks this morning on two independent reasons why that finding was in error. The first reason is that there is the hearsay within hearsay issue. And the second reason I'm calling the adopted admission issue. The trial court did not consider the ancient exceptions, ancient documents exceptions of Rule 9018. The opinion said all you have are newspaper articles and newspaper articles are hearsay and therefore that is not enough. Did you argue the ancient document? We did. We did. The court does not address it at all in its opinion. Tell me, I mean I'm not familiar that much with that exception. Tell me what that exception exactly is. Well, the specific exception says that it's two. One is that if a document is more than 20 years old, it is self-authenticating. And that's not Rule 9026. Do we know the age of these articles? We do. They were clearly more than 20 years old. I believe 1988 is when they were released. Who authenticated the age of the documents? Well, they are in a book that has in the title page a copyright 1988. So it's okay just because the book says it, that it's self-authenticated? Is that the argument? That is the argument. And I don't believe there's any. I thought they were newspaper articles. Well, it was originally a newspaper article that was then compiled into a book, a newspaper article that was an interview about how this song was created. And then it was compiled into a book that was a book of lots of stories about how songs were created and biographies. Well, if a newspaper, if it was yesterday's newspaper, it would be considered unreliable. Now that it's over 20 years old, how did it become reliable? Well, because the passage of time makes it so. The passage of time makes it reliable enough that the hearsay concerns are overcome enough to where the jury can consider it. Conclusion, but how did they get to be more reliable if they weren't reliable in the first place? Well, because if a statement in the newspaper two days ago, we don't know what the passage of time will reveal. As history develops, as the future goes forward, history changes as you learn more about it. And the compilers of the rules have determined that at 20 years, it is enough to meet the threshold of reliability that is at issue. Even if it's not reliable when it's published, the passage of time makes it reliable? Is that the argument? It's not, Your Honor. It's got to be true because it was in the newspaper, but it's not reliable for the first 20 years. But after 20 years, it's true because it was in the newspaper 20 years ago? I don't believe that's the case, Your Honor. I think what the rule is saying is that if it's more than 20 years old, it has met the threshold to where it's not conclusive. It doesn't waive every argument the defense wants to raise about why that statement shouldn't be held against them, but it allows it to get across the threshold of admissibility. So, Mr. Cates, aren't you really arguing that under this ancient document rule, that this really gets you past the admissibility threshold and allows the jury to consider an otherwise hearsay document and they can give to it the weight that they believe it deserves? The rule does not prescribe a certain amount of weight to give to that document, but it simply gets it across, as you mentioned, the threshold of admissibility. Is that correct? That's correct, Your Honor. The same as other hearsay exceptions get you past that admissibility threshold? That's correct. The district court's opinion says we didn't submit any admissible evidence, and under the ancient documents exception, we did. The 20-year timeline in the ancient documents exception, there are two levels of hearsay. If you look at the statements we didn't use, Mr. Davis told this same story in 2012, and there are two levels of hearsay there. One level is Spencer Davis saying, we copied this song, and the second level is the author saying, Spencer Davis told me he copied these songs. And if we tried to submit that document from 2012, Mr. Davis and Mr. Wynwood could correctly say, wait a minute, I can't cross-examine that witness, but if we called that witness, if we called the author of that 2012 article to come to the stand and say, Spencer Davis told me he copied this song, then that's a statement of a party opponent and a different issue. The Damjanjuk case about the concentration camp guard is effectively the same thing. He's saying, I can't cross-examine. You're submitting that some clerk 70 years ago wrote down, is saying, you told me these things, and I can't cross-examine that person, but the ancient documents exception allows you over the threshold, so those. The reason for the ancient documents exception is that if it's ancient, the people who wrote it probably would not have had any motive to make a false statement about something. That's the point of it, is that it is removed from the present controversy. These people might have. In 2012, it's closer to this controversy, but in 1980. Usually something like an entry in a family Bible, something like that. Exactly. Birth certificate, marriage certificate, a letter saying I got married yesterday to somebody. Absolutely. But in this situation, it's in a newspaper, and the general rule is newspapers are unreliable. I think so. It's called fake news these days. We hear that a lot. We see it a lot, too. You've got hearsay within hearsay within hearsay here, and to say that this is enough to get past summary judgment is kind of tough. Well, to pivot to my second point, part of the reason why if for the last 20 years people had been actively challenging this statement in this newspaper article, then that presents a different question, but the opposite is true in pivoting to the adopted admission argument. Steve Winwood. Adopted admission just because it's on their website, that they vouch for the truth? I mean, hearsay is something that you assert to assert the truth of the matter asserted. I mean, that's what hearsay is, and you're saying that they vouch for the truth of everything on a website? I mean, there's all sorts of stuff on websites, and to think that the person that has the website is vouching for the truth of everything, I mean, that's kind of a stretch, isn't it? I think it is not unreasonable to expect that to treat differently someone's personal Facebook page. I'm going to post pictures of my grandchildren. I'm going to pop off about the issues of the day. That can be treated in a different way. They post an InfoWars article. That doesn't mean that they are accepting that as true, but this is SteveWinwood.com. SteveWinwood.com decides to put articles about Steve Winwood. They are self-promotional. Mr. Winwood, again, back to Judge Donald's point, has the ability to say, hey, this was just a web person. I didn't read each of these things. But can a jury say, I don't believe that. You posted self-promotional articles about your history, and these say that this song was copied. These say, Spencer Davis admits, we copied the protectable element of this song. Can a reasonable jury, can the court say that a reasonable jury could not reach that conclusion? I don't think they can. You've got other evidence, don't you, like a substantial similarity? We have evidence of striking similarity, even. We have a musicologist that says that in the annals of popular music, this bass line has been used twice, in the Homer Banks song and in this song, and that those elements are protectable and could only exist, could not exist but for the absence of copy. Does he just listen to them or does he do some analysis of the notes? He does analysis of the notes. It is a repetition of five notes at the same level and then one at the octave below at the risk of offending the court. It's a da-da-da-da-dum. What did Judge McCauley rule on that evidence? He didn't talk about it. He didn't address it at all. Did you present that to him? We did. We presented it. The summary judgment motion was filed. We submitted our responses. They filed a motion to dismiss as well, and at the motion to dismiss level for personal jurisdiction, we had then gotten that and submitted it to the court as well, saying among the reasons that they directed their attention to the jurisdiction is here's an expert report that says that it's a strikingly similar song to a Tennessee songwriter. Okay. So that evidence that you submitted was in connection with the motion to dismiss on personal jurisdiction but not in opposition to the summary judgment motion? It was attached to our response to the motion to dismiss. It was before the court ruled on the motion for summary judgment. Okay. To answer my question, you did not submit that document in opposition to the summary judgment motion? That is correct, Your Honor. All right. Aren't you required to submit your documents in opposition rather than have the judge look through the file as to what might have been filed in unrelated motion? I'm out of time. I can address that on. Yes, please. I have two thoughts on that. One thought is if that was at trial if all I had is the musicologist expert, I think I get to the jury. But if that was the only thing I was relying on on summary judgment, I think that would be a problem. My second point is that we're not asking the court to have independently pulled out some exhibit to a deposition. This was an expert report that was submitted and prominently featured in our paperwork. Well, in your paperwork. Okay. The opposition to the motion dismissed is separate from the opposition to the motion for summary judgment. I know you're out of time, but I do want to talk about personal jurisdiction. Your argument here is that the defendant knew that the song was going to be released in the United States and, therefore, there's personal jurisdiction in the state of Tennessee. Is that your argument? That is correct. Did you argue that to be released in the United States doesn't mean it's released in every state in the United States? I could see that the United States, it might be New England, it might be Midwest, not necessarily Tennessee. Just because it's released generally in the United States doesn't mean it's going to go to Tennessee. Did you hone in on Tennessee that he knew that this song was going to be released in the state of Tennessee, and did you so allege, in opposition to the motion to dismiss? The specific focus on Tennessee was the point about submitting the striking similarity thing, that the knowledge was of a Tennessee. I'm talking about jurisdiction, whether he purposely availed himself to the jurisdiction of Tennessee, and when they say that we lack personal jurisdiction over Mr. Wynwood, you have to establish that you do have jurisdiction, and all you had was that he knew it was generally going to be released in the United States. That's correct. Do you think that's enough? I think it, plus the fact that they knew that the song that they were taking it from was from Tennessee residents. Tennessee residents. Why did it take them so long to sue? That is, that's a good question. I thought it was though, wasn't it? And I don't totally know the answer to that. I know that the law changed relatively recently that where Latches is no longer a defense, the only limitation is that you only get the three years before you sued to be able to go forward. There is no statute of limitations on this, huh? There's not a statute of limitations. It's just that all you can get is the final. That's remarkable. I mean, in view of the policy reasons for statutes of limitations, particularly since, you know, because witnesses are going to die, evidence gets stale, everything else. Okay. Well, most songs 50 years later aren't generating the kind of income that this one is. There's some though. Thank you. Songs that have a lot of life to them. All right. I didn't get how much rebuttal that you reserved. I reserved three minutes, Your Honor. Very well. You'll have your three minutes. Okay. Thank you. Good morning. Good morning. May it please the Court, I'm Jay Bowen of the Nashville, Tennessee Bar. Representing the defendant, Steve Wynwood, his brother, Mervyn Wynwood, and Cobalt Publishing. With me is my partner, Rebecca Shulman. May it please the Court, I'm going to get briefly to hearsay because I think it can be disposed of quickly, but let me make very clear that the timeline, which is undisputed and objectively verifiable, is an entire basis for Judge McCullough to have granted summary judgment and is an entire reason to affirm his decision dismissing this complaint. And let me briefly cover the timeline. So we're talking about a song, the Steve Wynwood, Give Me Some Lovin' Song was written in 1966. The plaintiff alleges that his song was written and released in October 1966, released, that is, being put on a record. So the plaintiff says October 66, after that the defendants had an opportunity to have heard and copied the song. That's their theory. The court asked for substantial similarity came up, and let me digress briefly and be clear, Judge Griffin, you are absolutely correct. The substantial similarity expert report was submitted not in opposition to the summary judgment, but tangentially to the personal jurisdiction issue. So it was not before Judge McCullough. It did not rise to, it was not even submitted to try to create a genuine issue of material fact. So that's correct. Having said that, though, October 66 is when the plaintiff says that's when the defendants had an opportunity to have heard. As the court knows well, substantial similarity access, these are presumptions that are relied upon by courts analyzing copyright cases. And they're presumptions. In this case, however, and what is required before there is liability or getting to the jury or getting beyond summary judgment in a copyright infringement case is evidence of copying. Copying is required. All sorts of songs sound alike. That's independent creation. So there is no evidence in this case of copying, and that's because the timeline verifiably, objectively, and without dispute. But Mr. Bowen, when you're talking about evidence of copying, isn't that a fact question? And so if it's a fact question, you have to put some evidence in there. And I know the precedent says it has to be plausible, but it seems to me that's not one of the elements that a jury would decide. Well, unless there is no genuine access. I'm sorry, Your Honor. No, go ahead. I didn't mean to interrupt. No, I'm sorry. I stopped and then started again, so you didn't really interrupt. Go ahead. Sorry. Certainly the finder of fact, the jury, has to decide genuine issues of material fact. Our point, and Judge McCalla agreed, and the timeline is indisputable, there is no genuine issue of material fact. There is nothing for a reasonable jury to decide. That's the timeline. Let me tell you why that's dispositive. October 66 is when the plaintiff says, after that you had an opportunity to hear defendants. Marvin Wynwood is a PAC rep. This was 1966. He's in his 70s. He kept a diary of every month of his musical career and every year. He retained his 1966 diary without dispute, and that's in the record. It shows that Gimme Some Lovin' was written on April 5 and 6, 1966, April, six months before October when the plaintiff released his song in London, England. Not only that, Marvin Wynwood's diary shows that on June 9 and 10 and 14, this song was recorded in London, England. Gimme Some Lovin' was recorded. Were that not enough, may it please the court, the diary showed that Gimme Some Lovin' was re-recorded in a studio in London, the Pye Records Studio, to add percussion and some other material musical elements. September 21, 1966, he says, was the re-recording, still before October 1966 when the plaintiff said, you could have heard the song. We found the tape box, which includes the re-recorded master recording, in Pye Studios, London, now owned by Universal Music of England. We submitted the declaration of the custodian of the vault of master recordings. On that tape box and on the recording is the date recorded, September 21, 1966. It's as if we had a videotape of the recording and we have objectively verifiable, indisputable, not contradicted evidence of independent creation. There is nothing for the jury to decide because the plaintiff didn't submit any facts that created a genuine issue of material fact. So whether or not Spencer Davis' statement, by the way, Spencer Davis is not a defendant. He was never served. This is rank hearsay. Ancient document or not, this is the triple hearsay problem. The Spencer Davis statement is not properly before the court. But even if it were, objectively, Spencer Davis is wrong. He could have submitted an affidavit that said 2 plus 4 is 17. He could have submitted an affidavit that said the world is flat. Those are equally dispositive and probative in this case because he is objectively wrong. We have objective, uncontradicted, verifiable evidence that clearly demonstrates and is not susceptible of any creation of genuine issue of material fact that Gimme Some Lovin' was written, recorded, and re-recorded before October 1966 when the plaintiff says that's when my record was hearable. Let me also say there is no evidence in the record that the plaintiff ever had radio play for his song. He never toured. There is absolutely no evidence to create a genuine issue that Steve Wynwood and Mervyn Wynwood independently created and wrote Gimme Some Lovin'. The facts are objectively demonstrable and conclusive. Independent creation means their song was written independently of any other song, including that of the plaintiff. So that's a lengthy but I suggest dispositive answer to Your Honor's question and the reason conclusively that Judge McCalla's dismissal and granting the motion for summary judgment should be affirmed. All right. So it's kind of your position that even if they argue there's an issue of fact, there's not a genuine issue of material fact, and that is a qualifier of it. Yes, sir. Not every assertion. Both. I'm sorry, Your Honor. Yes. Not every assertion. Well, there's an issue of fact. Well, unless it's genuinely in dispute. Well, given the objective evidence here, which is objectively verifiable, there can be no genuine issue, and I would suggest that. You still have to have a reasonable juror be able to rule that way based upon the evidence to actually submit it to the jury to get past summary judgment. So if it's not evidence that a reasonable juror could rely upon, it's not enough to get past summary judgment. Precisely, Your Honor. And briefly, on the issue of personal jurisdiction about which the court inquired, bear in mind that Mervyn Wynwood wrote this song, partially wrote the song with his brother in 1966 in London, England, recorded it in London, England, signed a recording agreement in London, England. Beyond that, and he never came to the United States to tour, he quit the band before they ever toured, came to the United States. He never came to the United States in any way connected to this song. He quit as an artist in 1967. His declarations make clear he's never been to Tennessee ever for any reason. He's been to the U.S. sporadically in his later career, but nothing to do with this song or his career as an artist. Mr. Bowen, let me interrupt you. You've talked about his connection or lack of connection to the U.S., but under the purposeful availment test, he wouldn't have to come to the U.S. or to Tennessee, would he? It's just whether or not he reasonably or took actions, rather, to have the song itself marketed in the United States, or whether he took any action to affect that market. Isn't that the test? Not quite, Your Honor. Let me clarify what I understand the test to be and then answer the Court's question directly. We've got, as the Court well knows, there is general jurisdiction and there is special or specific jurisdiction. I don't think there's even a serious contention that there is general jurisdiction over Mr. Wynwood, which leaves us with special or specific jurisdiction, and that's where one has to determine, did he purposefully avail himself of the forum, Tennessee? That's, I think, what the Court is asking about. The Bridgeport case, which is cited in our brief, makes very clear, and that's why I mentioned that Mr. Mervyn Wynwood signed a recording agreement and a publishing agreement with a British company in Britain 50-plus years ago. He hasn't even been to the U.S. in 13 years. When I think about the record, I'm not sure that Mr. Cates disagrees with you on that because he said in response to Judge Griffin's question that the connection to Tennessee was his allegation of an alleged copying of a Tennessee artist. So I thank you, and I'm corrected on that. So you may move on to your next point. Thank you, Your Honor. So that's all I have for the Court. The agreement he signed that you just mentioned, did that contemplate distribution of the song in the United States? Well, I didn't finish my train of thought, so thank you for reminding me. The Bridgeport case that we cited said even if it did, that's not enough for an individual who enters into a contract in England and the company he signs with might exploit the song somewhere else. That might purposefully avail somebody to get jurisdiction over the publishing company, but not of Mr. Wynwood in this case. So the answer is no. My question was, did the contract contemplate distribution in the United States? Actually, the contract is not in the record. And the plaintiff made absolutely no factual showing of personal jurisdiction. It's not in the record. I can answer the question, but it's not in the record. The contract that he signed with the English company didn't anticipate global exploitation of this song. Now, that company might have contracted with another company to distribute the song in the U.S. later. But that's not enough under the Bridgeport case for there to be personal jurisdiction over Mervyn Wynwood, who wrote a song 66 years ago and never did anything to exploit it in the U.S. Well, you've got to relate it to Tennessee, don't you? I mean, the United States in general I don't think is sufficient. I think that's quite the law. And I think Mr. Cates admitted that. I'm talking about the U.S. generally, but absolutely nothing in the record to connect it with Tennessee. He's availing himself to the forum, and the forum is the state of Tennessee, right? Yes, sir. And there is nothing in the record. I don't see any allegation connecting him to Tennessee other than he's alleged to have copyrighted the song from a Tennessean, I guess. Well, there's not even that allegation. There is no allegation, and the only affirmative mention of Tennessee is in Mervyn Wynwood's declaration where he says, I've never been there. So I suggest there is no connection with Tennessee. Thank you. We've still got time, but do you have anything else? No, I don't. You don't have to use it all. Judge Donald, do you have any other questions? I do not. Mr. Berlesman, at this point. Just one. So the test would be different than, say, you heard the argument on the car, the case preceding yours. They distributed that car throughout the United States. Well, I. Assuming the glass roof exploded and all that they said. They could be sued by anybody who was injured in that car throughout the United States. Personal jurisdiction. You want me to talk about their case? Well, no. Or how does it apply to mine? I'm not going to stop too soon. Is the law the same for copyrights, or is it different? Well, there's got to be some action, whether it's a copyright or a car or anything else, to purposefully avail oneself of something in Tennessee. Here, if there's a car wreck in Michigan, I don't think that does anything to provide personal jurisdiction over a defendant unless they knowingly put something in the chain of commerce that reaches Tennessee. That's not this case. Mr. Mervyn Wynwood didn't knowingly put anything in the chain of commerce. And under the Bridgeport cases, that's not enough. Just to record a song and sign a recording agreement is not enough. All right. Thank you, counsel. Thank you. Rebuttal. Mr. Cates, I want to start off by asking you, if, as Mr. Bowen said, the Appleese had in the record verifiable evidence of this song being written in April of 66 and recorded in June and re-recorded in September, all of those events occurring prior to October 66, what evidence did the plaintiffs, if any, put in there to rebut that? Because if that's what the district court had, it seems like you don't even get to the substantial similarity issue. Am I incorrect in that? I'm happy to address that issue, Your Honor. For independent creation to be a silver bullet, it has to be impossible. Years ago, I was an associate for Mr. Bowen, and we had a case, the Fogarty v. MGM case that is before this court, where we had evidence that the part of the song that we created existed several months before the plaintiff had sent the demo tape that he was basing his theory of access on. The defendant's song was in the world first. That's not the case here. Ain't That a Lot of Love was written in 1965. It was copyrighted in April of 1966. It existed. The unstated presumption that the defendants are asking you to accept is that the only way they could have heard the song was after it was released in England. That is not consistent with either Spencer Davis's statement that, yes, we did hear it, and it's not consistent with what we know about music history. The history of the British invasion is British teenagers listening to imported American R&B records and then presenting a fresher face, so to speak, on those to the American public. Unless they can say the arguments that Mr. Bowen has said that Spencer Davis is just wrong, well, that's a jury argument. How could they have heard it if it hadn't been released? It had been released in America. In America, but not in England. Correct. So the idea that it is just impossible and it couldn't have happened is one theory, and it's a defense that might carry the day, but an equally reasonable inference that a jury could prove is that Spencer Davis was right, and they did hear it. Mr. Bowen, is that correct, that it was released in America? It was released in England on October 7, 1966. On a promotional basis, which means it was not on the radio. It was given to various people. It is my recollection that it was released in the U.S. after that. Am I wrong? Is this in the record? I mean, we can find out. I just thought maybe I'd get a quick answer here. The complaint alleges what? Yeah, the complaint just says 1966, I believe. It was copyrighted in April 28, 1996. This sounds like an issue of fact to me now, that if it were released in America, it could have been heard. I think the theory is that it could have been imported to England and then he heard it from the release in America. There is absolutely no evidence in the record of any of that. Oh, is this speculation then? Yes. There is no evidence the record was released, that it was ever on the radio, that the plaintiff ever toured, sang the song anywhere. Entirely speculation. We brought before the court that it was released in England on October 7, 1966. All right. But isn't there evidence that Mr. Vaughn is? You may sit down, but thank you. Judge Donnelly, you have a question? Well, I was saying that in reviewing the record, though, it seems that there is information in the record that says that the Ain't That a Lot of Love failed in topping the charts. And in order for it to fail in topping the charts, there had to be some dissemination and a metric used to determine whether it did or did not. And so that raises questions in my mind. Maybe that's not a question, just a statement on my recollection of the record. No, no. Your time is up. Thank you, Your Honor. No, your time is not up. I'm not done with you yet. Okay. Can you respond to Mr. Vaughn's statement that this is all speculation about being released in America, that the teenagers could have heard it and, therefore, imported it to England, and that this is the matters that are not in the record and, therefore, we can't consider it? So, I mean, your argument that made a lot of sense to me just really isn't in the record. So can you respond to that? Well, the complaint alleges that the song was written in 1965 and copyrighted in 1966. And then it is we're forgetting that one of the three people that have written the song, I did hear it. And that, I submit, should be enough to have a jury consider this. All right. Anything else? We spent a lot of your time. Do you want to wrap up? I'm satisfied, Your Honor. Thank you. Judge Zottel, any more questions? No, but I just want to make a statement to you, Judge Griffin. In this wonderful courtroom in Knoxville here, the sun is now coming in through the skylight. So while these attorneys are shifting, I'm going to have the technician come in and change the direction of the camera. So I'm going to step up for just a second. Okay. We'll take a recess. Oh, you don't need to do that. This case is over. Do you want a five-minute recess? Yeah, he's just next door. He'll just come in and do it. Don't change. Just a moment. Thank you. Okay. No further questions here. All right. Case will be submitted. I think we will take a ten-minute recess before we call the next case. Case is submitted.